UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FERNANDO DAVIS,

                    Plaintiff,                          Case Number 11-11196

v.                                          Honorable David M. Lawson
                                                  Magistrate Judge R. Steven Whalen

ROBERT J. PICKELL, JAMES
GAGE, OFFICER BAYLOCK,
OFFICER MACEY, OFFICER
BUCHANAN, and OFFICER
COCKING,

                    Defendants.

_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND
GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On February 6, 2013, Magistrate Judge R. Steven Whalen filed a report under 28 U.S.C. §

636(b)(1)(B) recommending that the Court grant in part and deny in part the defendants' motion for

summary judgment in this jail beating case. Four defendants filed timely objections, and the

plaintiff has filed a response. The matter is now before the Court for *de novo* review. After

thoroughly reviewing the evidence, including the videotape of the event that occurred inside the

Genesee County jail on the night in question, the Court is in substantial agreement with the

magistrate judge, and therefore will adopt his report and recommendation.

I.

The facts of the case are well summarized by Judge Whalen and need not be repeated here.

It is enough to state that sometime late in the night of March 24, 2009, plaintiff Fernando Davis was

arrested for drunk driving, transported by the state police to the Genesee County Jail, and booked

into a holding cell at the jail. Davis was removed from the multi-prisoner cell and taken to a single-

inmate "safety cell." He alleges that during the transfer, Genesee County deputy sheriffs Baylock,

Macey, Buchanan, and Cocking subjected him to excessive force in the course of removing his jacket and shoes.  The videotape provides substance to those allegations.

In his report, Judge Whalen concluded that (1) based on the video evidence in the record, Davis has demonstrated that a genuine dispute of material fact exists as to whether the deputies used excessive force in tackling and subduing him while in the single-inmate "safety cell"; (2) based on the same evidence, the plaintiff has established viable claims for state law assault and battery and intentional infliction of emotional distress; (3) the claims against defendants Pickell and Gage must be dismissed because the plaintiff has not established that they had any personal involvement in the conduct at issue; (4) the claims against the defendants in their official capacities must be dismissed because the plaintiff has failed to establish any pattern, practice, custom, or policy as would be required to show municipal liability; (5) the claim for conspiracy is barred by the "intracorporate conspiracy" doctrine; and (6) the state law assault and battery claims against defendants Buchanan and Cocking, who were added to the case later in place of "John Doe" defendants, must be dismissed because they were filed out of time.

The defendants filed specific objections to the magistrate judge's report and recommendation, contending that (1) the magistrate judge erred in recommending that the excessive force claim should not be dismissed because he ignored evidence of the plaintiff's "assaultive conduct" and did not afford the proper deference to the judgment of the deputies on the scene; and (2) the defendants are entitled to governmental immunity on the state law intentional tort claims, even if plaintiff could show that he is entitled to proceed on the constitutional claims of excessive force.  According to the defendants, "there is only one version of the facts — that of the deputies, which is supported by the jail video footage."

-2-

The plaintiff did not file objections to the report, and the time for doing so has passed.

## II.

Objections to a report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to review independently the motion. *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380). "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

As mentioned, the plaintiff has not objected to the magistrate judge's report and recommendation, and the Court will adopt without further discussion the part of the recommendation to dismiss (1) the assault and battery claim against defendants Buchanan and Cocking, (2) the

conspiracy claims, (3) all claims against defendants Pickell and Gage, and (4) all official capacity claims.

The case is before the Court on the defendants' motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed.R.Civ.P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).

The plaintiff's federal claims are based on 42 U.S.C. § 1983. To state a claim under that statute, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The plaintiff must establish the liability of each individual defendant by that person's own conduct. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The defendants argue that the facts are uncontested, the evidence does not demonstrate a constitutional violation, and the defendants are entitled to qualified immunity. Not so. The

-4-

videotape tends to support the plaintiff's version of the events, or at least it can be viewed that way. And on summary judgment, especially when qualified immunity is raised, " [the Court] must review the evidence in the light most favorable to the Plaintiff, taking all inferences in his favor." *McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010) (citations, quotation marks, and alterations omitted). As the Sixth Circuit has explained, "[q]ualified immunity is a question of law, but 'where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.'" *Ibid.* A defendant asserting qualified immunity on summary judgment "'should be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the case.'" *Booher v. N. Ky. Univ. Bd. of Regents*, 163 F.3d 395, 396 (6th Cir. 1998) (quoting *Berryman v. Rieger*, 150 F.3d 561, 564 (6th Cir. 1998).

## A. Excessive Force

Defendants Baylock, Macey, Buchanan, and Cocking argue that they are entitled to qualified immunity against the plaintiff's claims of excessive force. Qualified immunity is an affirmative defense that protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of this defense is to strike a balance that "accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quotation marks and citation omitted). The defense is intended to protect state actors who must operate along

the "hazy border" that divides acceptable from unreasonable conduct. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)); *see also Saucier*, 533 U.S. at 202 (describing the Court's inquiry as "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); *cf. Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (noting that the right must be sufficiently particularized to allow a reasonable official to understand that he is violating the right). However, the Supreme Court has clarified that neither a decision of the Court nor an extreme level of factual specificity is necessary in every instance to give fair warning. *See United States v. Lanier*, 520 U.S. 259, 268 (1997); *see also Gould v. Symons*, 275 F. Supp. 2d 843, 848 (E.D. Mich. 2003). The Supreme Court has observed that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "The fact that the law may have been unclear, or even hotly disputed, at the margins does not afford state actors immunity from suit where their actions violate the heartland of the constitutional guarantee, as that guarantee was understood at the time of the violation." *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir. 1997).

Although the law of qualified immunity is well established as it applies to this case, the substantive standard of conduct that must inform the Court's consideration of the defense is less so. In *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), the Sixth Circuit clarified the standard that applies to excessive force claims brought by individuals who, like the plaintiff, are arrested and

-6-

turned over to jail authorities for booking, but who have not yet appeared before a judge for a probable cause hearing.  An excessive force claim that arises in the context of an arrest or investigative stop of a free citizen is analyzed under the Fourth Amendment's "reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  A claim brought by a person who has been convicted of a crime and is serving a jail or prison sentence is governed by the Eighth Amendment proscription against cruel and unusual punishment.  *Whitley v. Albers*, 475 U.S. 312, 318-322 (1986).  Where neither the Fourth Amendment nor the Eighth Amendment applies, as in the case of a pretrial detainee, the Fourteenth Amendment applies.  In *Aldini*, the Sixth Circuit held that during the time an individual is in custody between his arrest and his appearance before a judge, the Fourth Amendment applies.

The Fourth Amendment standard is objective, and it is applied without reference to the officer's subjective motivations.  *Graham*, 490 U.S. at 394-95.  The "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case . . . .'"  *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396).  The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case."  *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).  A court must recognize that "officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."  *Graham* at 397.

However, the incident that provoked the plaintiff's claims occurred more than a year before *Aldini* was decided.  The defendants argue that at that time, it was not clearly established that the Fourth Amendment governed excessive force claims brought by pretrial detainees who have not

-7-

appeared before a judge following arrest, and therefore the Fourteenth Amendment due process standard should apply to their qualified immunity argument. "A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the "objective reasonableness" test of *Graham*, in which excessive force can be found if the officer's actions, in light of the totality of the circumstances, were not objectively reasonable." *Darrah v. City of Oak Park*, 255 F.3d 301, 305-306 (6th Cir. 2001). To rise to the level of a substantive due process violation, the officers' conduct must "shock the conscience." *Id.*; *County of Sacramento v. Lewis*, 523 U.S. 833, 846-847 (1998).

Although the Fourteenth Amendment due process standard may be more demanding than the Fourth Amendment objective reasonableness standard, it does not give jail officials free rein to mete out physical punishment at will. "It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395, n.10. Moreover, "public servants' reflexive actions" will "'shock the conscience'" when "they involve[] force employed 'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (quoting *Lewis*, 523 U.S. at 852-53).

The Court need not decide at this stage whether the Fourth Amendment or the Fourteenth Amendment governs the plaintiff's claims, because on the record as it stands, the plaintiff has presented sufficient evidence to defeat the defendants' asserted qualified immunity defense under either standard. It shocks the conscience to beat senseless an unresisting prisoner in order to remove his shoes and jacket. And if the facts viewed in the light most favorable to the plaintiff make out

-8-

a due process claim, then the plaintiff necessarily has shown a Fourth Amendment violation as well. *Aldini*, 609 F.3d at 867.

Although the parties dispute many factual details of the events that occurred at the jail, each offered as an exhibit video evidence that presents a comprehensive record of the entire incident, despite the low quality of the images.  A video recording of an incident such as this is important evidence that sometimes can be dispositive of a fact dispute.  The Supreme Court explained in *Scott v. Harris* that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  550 U.S. 372, 380 (2007).  Instead, the Court should "view[] the facts in the light depicted by the videotape."  *Id.* at 381; *see also Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007).  In some cases, the Sixth Circuit has determined that the existence of a recording of the event makes "the underlying facts of the case . . . undisputed."  *Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008).  At the summary judgment stage of an excessive force claim, once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supported by the record . . . the reasonableness of [the defendant's] actions . . . is a pure question of law."  *Id.* at 353 (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis omitted).

The magistrate judge noted in his report that "[a]t oral argument on [the motion for summary judgment], plaintiff's counsel agreed that the DVD constitutes the only evidence that would show a legitimate issue of fact as to the § 1983 and assault and battery claims."  In fact, the video contradicts the accounts of both the plaintiff and the defendants, but the Court finds that a jury

-9-

reasonably could conclude upon viewing it that the deputies did engage in conscience-shocking conduct and committed an assault and battery on the plaintiff.

As the magistrate judge observed, most of the tape shows the plaintiff simply sitting, standing, or walking through various parts of the jail. Because the video has no sound, it is impossible to determine what he said during the times when he appears to speak. Contrary to the defendants' account, the footage inside the holding cell area does not reveal any obvious or dramatic "agitated" behavior by the defendant. Although he appears to speak to other inmates, he spends some of his time just sitting on the bench, and most of the occupants of the cell appear to remain asleep or to ignore his presence. It also is not clear from the video that the plaintiff refused to cooperate with deputies when taken out of the holding cell or while walking. Davis does pause and apparently speak to one of the deputies for about four seconds during the walk to the safety cell, but there is no physical contact between plaintiff and the deputies before the incident that happens in the cell. The video appears to cover the entire transit from the holding cell to the safety cell, and there is no point at which the deputies pepper spray, tackle, or otherwise physically handle Davis while en route.

The video records the moments before, during, and after the struggle in the cell, both from a hallway camera and a ceiling camera inside the cell. The most salient events occur during an approximately three-and-a-half minute time span between timestamps 51:42 and 54:11 in the video. The magistrate judge, after reviewing the entire video, found that the acts depicted before, during, and after the struggle in the cell give rise to a genuine dispute of material fact as to whether the officers applied force "maliciously and sadistically" in order to cause harm, and if their actions therefore "shock the conscience." The defendants object to the magistrate judge's factual findings

-10-

regarding that portion of the video, contending that "[the hallway camera angle] is not discussed in the Magistrate Judge's Report and Recommendation," and that in particular the magistrate judge "fail[ed] to take into consideration Plaintiff's assaultive conduct." According to the defendants, the magistrate judge "ignored" the section of the tape that "shows Plaintiff's shoe flying into the hallway prior to the deputies rushing into the cell." The defendants further stress deputy Cocking's testimony about the "flying" shoe, in particular his assertion that the shoe "hit him":

> Q.    Where did it hit you?
> A.    I think in the shin.
> Q.    Hard?
> A.    Yeah, it was pretty hard, it was an aggressive action definitely.

Def.'s Mot. for Summ. J., Ex. 4, Cocking dep. at 16.

The video record is not so dramatic as the defendants represent. The shoe in question does appear low in the frame, moving on or very close to the floor, just before the deputies rush the cell. However, it does not appear to be "flying," and it is not at all apparent from the video that it was thrown or kicked with any substantial force, or that it struck anything. The legs of the deputies standing outside the door obscure the "flight path" of the shoe, and a jury reasonably could find that the tape shows the shoe being flipped or dropped, or it could conclude that it supports the testimony of the defendants that the plaintiff threw or kicked it. The in-cell camera is likewise ambiguous, because it shows the plaintiff making some movement with his leg, but not one that is especially dramatic or apparently forceful. The in-cell video reasonably could be interpreted to show either a "flip" or "drop" of the shoe just as well as a "kick."

Moreover, the in-cell camera contradicts the defendants' assertions that the plaintiff approached the cell door in an aggressive manner. As the magistrate judge found, the tape does not depict the plaintiff with his fists clearly "balled up," and in fact it does show his right hand open and

-11-

flat, as the plaintiff raises it and places it on the wall next to him, apparently to balance himself while he removes his shoe. Nothing about the plaintiff's demeanor or approach to the door compels the conclusion that he was acting "aggressively" in the moments before deputies rush the cell and tackle him. A jury might conclude that the tape supports the defendants' version of events; but it also might not. Because there is a genuine dispute of material fact regarding the plaintiff's demeanor and the motive of the deputies in using force against him, the Court cannot find that the defendants are entitled to judgment as a matter of law. The defendants' motion for summary judgment on the excessive force claims therefore must be denied.

The defendants object that the magistrate judge did not afford the proper "deference" to the judgment of officers on the scene in evaluating the claim of qualified immunity. They cite *Caldwell v. Moore*, 968 F.2d 595 (6th Cir. 1992), for the proposition that

> [w]hen an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, *and the inmate cannot be persuaded to obey the order*, some means must be used to compel compliance, such as a chemical agent or physical force.

*Caldwell*, 968 F.2d at 602 (emphasis added). This argument might have some persuasive force, if not for the fact that the tape — corroborated by the deputies' own testimony — clearly shows that at the time the deputies charged the cell, the plaintiff was complying with their order to remove his shoes. Deputy Cocking himself testified that the plaintiff removed his first shoe just prior to the rush, so the defendants cannot justify their acts as necessary to gain his compliance.

The defendants further argue that in order for the Court to deny their defense of qualified immunity, it must find that "every reasonable official would have understood that what he is doing violates [the plaintiff's constitutional right]. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, --- U.S. ---, 132 S. Ct.

-12-

2088, 2093 (2012).  Although there may be room for reasonable debate over whether the deputies were reacting to "assaultive conduct," there can be no debate on the conclusion that if they were not, and if instead they employed force "maliciously and sadistically . . . rather than in a good faith effort to maintain or restore discipline," then their actions violated the plaintiff's clearly established due process right to be free from the unconstitutional use of excessive force during his jail stay.  If, as the plaintiff claims and the video record suggests, the deputies employed force not to quell "disobedience" but in retaliation for "disrespect," then their conduct violated a clearly established constitutional right that any reasonable official would recognize.  Because the record presented to the Court does not establish that the deputies acted in response to a legitimate need to restore order or secure compliance with their orders, they are not entitled to the shield of qualified immunity against the claim that they used excessive force at this stage of the case.

## B. Assault and Battery

"An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. 110, 472 N.W.2d 16, 21 (1991) (citing *Tinkler v. Richter*, 295 Mich. 396, 295 N.W. 201 (1940)).  To establish a viable claim for battery, the plaintiff must demonstrate a "willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.*  Because a jury reasonably could conclude that the use of pepper spray and physical force to subdue a compliant prisoner and remove his clothing was excessive under the Fourteenth Amendment due process standard, there is no question that when the defendants tackled the plaintiff, they "offered" to employ unlawful force

-13-

against him at the time of their charge toward him into the cell, and they committed a "willful and harmful . . . touching" in the ensuing struggle.

The defendants object that they are entitled to governmental immunity on all of the plaintiff's state law intentional tort claims under the standard announced in *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008). As the *Odom* court explained,

> If the plaintiff pleaded an intentional tort, [then the Court must] determine whether the defendant established that he is entitled to individual governmental immunity . . . by showing the following:
>
>> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>>
>> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>>
>> (c) the acts were discretionary, as opposed to ministerial.

*Odom*, 482 Mich. at 480, 760 N.W.2d at 228. Because, as noted above, the jury reasonably could conclude that the defendants acted "maliciously" in using force and not for the legitimate purpose of compelling the plaintiff to obey their commands or to repel an "assault," the defendants necessarily have not established that they acted in good faith and without malice. The defendants therefore are not entitled to governmental immunity on any of the state law intentional tort claims.

### C. Intentional Infliction of Emotional Distress

To make out a claim for intentional infliction of emotional distress, the "'plaintiff must prove the following elements: '(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577, 686 N.W.2d 273, 276 (2004) (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713, 716 (1999)). "Liability for [the intentional infliction of emotional distress] has been found only

-14-

where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Haverbush v. Powelson*, 217 Mich. App. 228, 234, 551 N.W.2d 206, 209 (1996). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Graham*, 237 Mich. App. at 674, 604 N.W.2d at 716. The magistrate judge cogently summarized the record as to this claim:

> As discussed above, there is a question of fact as to whether Defendants Baylock, Macey, Buchanan and Cocking violated Plaintiff's constitutional rights by using excessive force. Accordingly, there are sufficient facts for a jury to find that Sheriff's Deputies administered a severe and unprovoked beating to an intoxicated prisoner. This could be fairly characterized as outrageous behavior. Summary judgment should be denied as to the IIED count.

Rep. & Rec. [dkt. #51] at 16. The Court agrees. Moreover, the defendants are not entitled to governmental immunity on this state law claim for the reasons discussed above in reference to the claim for assault and battery.

III.

The plaintiff has presented a record from which a jury reasonably could conclude that defendants Baylock, Macey, Buchanan, and Cocking used excessive force against him, in violation of the Due Process Clause of the Fourteenth Amendment. He also has presented sufficient evidence to carry forward his claims of assault and battery and intentional infliction of emotional distress, with the exception of the claims for assault and battery against defendants Buchanan and Cocking, which are time barred and must be dismissed. The plaintiff has not objected to the magistrate judge's recommendation to dismiss the other claims.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #51] is **ADOPTED**, and the defendants' objections [dkt. #52] are **OVERRULED**..

-15-

It is further **ORDERED** that the defendants' motion for summary judgment [dkt. #39]  is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that all claims against defendants Robert J. Pickell and James Gage are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that all claims against the defendants in their official capacities are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the claim for conspiracy is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the claims for assault and battery against defendants Buchanan and Cocking **ONLY** are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion is **DENIED** in all other respects.

It is further **ORDERED** that the order referring pretrial matters to the magistrate judge [dkt. #5] is **VACATED**.

It is further **ORDERED** that counsel for the parties appear before the Court for a status conference to discuss further case management deadlines on **April 16, 2013 at 4:30 p.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 26, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 26, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

-16-